Good morning, Curtis Morrison for the appellants. May it please the court. Appellants here are a family including a local U.S. citizen, Dr. Nourbakhsh, his parents who are non-citizens who he petitioned to join him in the U.S. in 2022. Following the appellants noticing the appeal in this matter however, visa applicant parents were scheduled for interview and his mother was issued a visa and did immigrate to the U.S. His father, however, is still in Iran. Well the request has been denied as to his father, right? So can you explain to us why this case is not now moot given the most recent development? Yes, Your Honor. We could skip to that. The notice that the government filed a few days ago, it was what's called a 212F notice which notifies the applicant that he is subject to the president's travel ban, Proclamation 10998 in this case. It's position that that is not a facially valid refusal notice because it does not go to the applicant's eligibility for the visa. Section INA 212F gives the president the authority to exclude a class of aliens from entering the U.S. It does not extend the authority for a consular officer to refuse a visa. Every court that has considered that, that I'm aware of it, that I'm aware of that on that issue has sided with plaintiffs and against the government and said you have to give them a visa decision even if it's a visa that says subject to the proclamation which has happened. So your position is that's not what happened here? That they didn't deny a visa based on the proclamation? That's my position, that the applicant does not have a facial, facially valid visa decision based upon his eligibility. But I guess I'm a little confused because the the notice does say this is to inform you that a consular officer found you ineligible for an immigrant visa under section 212F. So what, could the government not invoke 212F to deny the visa? No, not from the words of 212F. 212F is not about visa issuance. They could have put a statute there about the Social Security Act or something. It's not, nothing in 212F gives the consular officer the authority to refuse the visa. But so what if, what if the consular officer were to have granted the visa? Would, would the father still be unable to be admitted because of 212, because of this proclamation? Great question. That actually happened in a case called Thine v. Trump in September. It was my case before DDC. And Judge Sukhnanan ordered the government to go ahead and make the visa decisions and issue the visas. And 17 of the plaintiffs were issued visas that said subject to the proclamation. Which means, and I advise them all, you can't enter the U.S. while the proclamation was in effect. And then on December 16th, the president issued another proclamation that overwrote the first proclamation and said that people that have issued visas can enter the U.S. So those 17 Iranian visa applicants who were issued visas in September are now living in the U.S. with green cards. So how, I guess at this point, you know, a lot's happened since this was at the district court. So what do you think the proper way of dealing with this is? Because these are all new arguments that you're raising here, understandably, because the status report was only recently filed, but the district court's never considered this at all. Correct. I actually don't think that this is the proper case for the 212F challenge, because it was just sprung on the court a few days ago. And this appeal originated with a different issue, and I think that we should stick on the path that we're headed on. Which is what? What are you asking us to do right now? So we're here today because appellants asked the court to reverse the 212B6 dismissal, remand for further proceedings before the district court, because the district court prematurely resolved a fact-intensive, unreasonably delayed claim on the pleadings without... So does that mean that he is technically still in administrative processing? Is that the delay issue still? Great question. So that's what it meant until a few days ago. And even though this process started in 2022, a few days ago, the government just now gave him a 212F refusal. So technically, the government does not consider that administrative processing. Under the law, it's sort of a no-man's land, because the INA doesn't provide for a 212F visa refusal. It's just not a thing. So, I mean, the case began with this issue of the delay over the interview. But then during the pendency of the appeal, there were interviews. Then the case is turned to administrative processing. Now it seems that there's maybe, you know, that may not be an issue, or maybe it is, but we also have the 212F issue. So what's the proper way of dealing with all this? Well, great question. So the court's in a position sort of like a menu. Which one of these issues do you really want to run with? The appellants brought this appeal, and they want to stay true to that on the issue of district court judges should not be dismissing unreasonably delayed claims at the motion to dismiss stage. Right, but I guess I'm a little confused as to what it is that you're asking for. Due to the developments as the appeal made its way to us, certain issues have now been mooted. Have they not? So what is your position on which issues have been mooted and which one remains live? So, for example, if we were to consider, say, a remand back to the district court, what's left of this case in your view? Because the delay in the interview, that's gone. That's now mooted. He was in administrative processing, but now a decision has been made. So that administrative processing issue is mooted too, right? So in your view, what's been mooted and what's left to be decided? Great question. So when the case, if the court agrees with appellants and remands the case back to the district court judge, what invariably will happen is the mootness argument would be and the district court judge would opine and weigh in on whether a 212-F refusal satisfies the government's duty to give a visa decision. There have been five cases where judges did not find that it's satisfied the government's duty. Have there been any cases the other way? Not that I'm aware of. And part of it's, this is sort of a novel challenge that we did first in 2021 during the COVID era. And so it doesn't have a lot of history. So the issue of whether an interview needed to be provided, that does seem to be pretty clearly moot because the interview was provided. But on the issue of whether the administrative processing piece of this is moot, I just want to make sure I understand your position because earlier I had thought you had said that was not moot because you essentially believe your client's father to still be in administrative processing, notwithstanding this 212-F notice, because I guess your position is that that's just not an effective visa determination. So is your position that at this time the father really is still in administrative processing, notwithstanding what the government may say? If you define administrative processing that way, I would say yes. I think he's more in a limbo that's created by State Department's own misinterpretation of 1192-F. So if the executive order is reversed and they are from time to time, what happens then? Is he in administrative processing then or is he still in no man's land? That's a great question because there's another case before the Ninth Circuit that perhaps another panel will hear in a month or two called Ascari, where the government is actually arguing that appellants have not proven that that's not a final decision and suggesting that the refusals subject to the travel ban, and there are thousands of them, are final decisions. When members of the public come to me and ask me, is that a final decision? What's that mean? I always go back to what President Biden did on January 21st, 2021, when he rescinded Proclamation 9645 and 9883, sometimes known as the Muslim and African Bans. When President Biden rescinded those, in that proclamation, he provided a pathway for some, not all, of the victims of those proclamations to move forward with their existing applications or make new applications. I think what ultimately happens to the—I'm using the word victims because I can't think of another word—the people that are impacted by the current proclamations, those applicants, what happens depends upon how this proclamation is rescinded and by which president, what their prerogative is and what they prescribe. So I'm still not clear on what it is that you're asking us to do, given that your view is that he's now in this no-man's land. Is the best course of action to remand to the district court so that whatever remaining issues there are could be briefed, and then you could bring yourself up to the current posture? Or do you want us to sort out some of these issues, decide what's left, and reach a decision in the first instance? It's appellant's position that the case should be remanded back to the district court judge and for the district court judge to have an opportunity to address the 212F refusal. And going back to your Honor's question on administrative processing, that's not even fully briefed in this appeal because neither of the applicants were in administrative processing when appellants filed their opening brief. That was a development that happened after. So the administrative processing part is only briefed in appellee's answer and the reply. All right. Did you want to save a little bit of time for rebuttal? Yes. Thank you. Thank you. May it please the court, Eric Snyderman on behalf of the United States. The government's position is that this case is moot. Article 3 standing simply does not exist to do a lack of redressability, as we've just discussed. And even if the case is not moot, this court should affirm the district court's decision on its conclusion. Why should it not be remanded? Because a lot has happened since the district court first decided this, and it seems that the appellant has other arguments that he wants to make against the current state of play. Your Honor, this court has the obligation to independently ascertain jurisdiction, and because the case is moot, jurisdiction does not exist. There is no redress. But why is it moot? I mean, isn't there still a live controversy between the appellant and the government? The government's position is that now that the 212F refusal has been issued, there is no live visa application, Your Honor. Right, but he contests that. Yes, Your Honor. So is that not a live controversy? I mean, you may be right, but it doesn't mean it's moot. Your Honor, the government's position is that this case was moot from the time it was brought, because the plaintiff also sued improper defendants. Wait, I'm sorry, I didn't hear that last part. Because? At the time that this case was brought, the plaintiff sued two defendants who could not redress the claim that he made. He sued the Attorney General and the Secretary of State. The government's position is that neither of those individuals is a consular officer, and neither one has the power to adjudicate a visa application. Doesn't that possibly change now that we're looking at a policy from an executive order that is implemented by the Secretary of State? Your Honor, just looking back at the decision to dismiss on plausibility grounds, this was not a plausible claim to delay under the APA, and the government would submit that that is what this case is about. But to delay what? Right, originally it was about delaying the interview. So that was what the district court examined, I think, and then the interview happened. So now we're talking about some other delays that the district court hasn't yet considered. That's correct, Your Honor. The scheduling delay and the claim that the plaintiff has made that administrative processing is an additional delay are separate issues. However, the plaintiff has sued defendants who simply can't provide any relief at all. Was that argument raised below? Yes, Your Honor. To the district court? Yes. But the district court didn't address this issue about whether the Attorney General or the Secretary of State is the proper defendant? The reasoning was very detailed, Your Honor. We understand from some of the citations that the district court disagrees with that position. But the plaintiff could cure that? Very likely, Your Honor. The plaintiff could amend the complaint. The plaintiff could add additional counts. So what is your view as to whether the petitioner or the client here is still in administrative processing or he's out of processing? Under the 212-F refusal, Your Honor, he is out of administrative processing. What if the executive order is reversed? Does he go back into, automatically go back into administrative processing then or does he have to file a new case? Your Honor, as Plaintiff's Counsel has said, that issue has not been briefed here and there are several other cases in which it is being briefed. In which what is being briefed? Other cases? What would happen if the 212-F proclamation, if the proclamation the President issued were overturned? That's not an issue before this Court, respectively. Is it being briefed in other cases before the Ninth Circuit or is it in the district courts? I understand that it is all in district courts right now. We would expect that it would percolate up. I mean, I can imagine for the appellants, it's a little frustrating. You lost, they litigated that, then they appealed and then lo and behold, they get the interview. And then the case pivots to administrative processing and then a few days before argument, we get this notice saying, oh, it turns out he's out of administrative processing. So the case is constantly changing shape based on new developments. Yes, Your Honor, we understand how this might be frustrating and of course, the particulars of the situation with Iran are such that applicants from that country apply at various visa issuing posts in the region. In this case, the plaintiff appellant actually moved his application, his visa application among different embassies and that is in the record. That's allowed under the various procedures, but that's also an effort to try to change what he would assert is a delay, to try to speed up the processing of the application. In fact, that slows down the processing of the application. So even on the different outcomes than we might have wanted. Was the 212F the only reason he was denied the visa? No, Your Honor. I would point back to the statutes, just a moment. There's a statute that places the burden on the applicant. That's 8 U.S.C. 1361, Your Honor. That statute just requires that any visa applicant demonstrate to the consular officer that they are eligible and admissible. And in this case, all that the consular officer said at the first time, the first interview, is that the applicant did not meet that standard of demonstrating eligibility beyond. Do we know why? That's not in the record, Your Honor. So what remedies does someone in the petitioner's position have? The government's position is now a moot, so that this whole appeal should be dismissed, right? Yes, Your Honor. And then if the proclamation in another case or if they bring a challenge to the proclamation in this particular case in a separate lawsuit and it gets reversed, then what? He replies or does he, does this denial then get revived and he's placed back in administrative processing again? How does that work? Well, first, respectfully, Your Honor, the briefing would have to be done on the 212F refusal. But if we were to turn back to the way that this case was before last Thursday and consider it there, the applicant can always apply for a different visa, can always try to demonstrate different facts that would show eligibility. That is the burden that the statute places upon them. And of course, administrative processing is for the convenience of the applicant. It's for the Department of State to try to identify new information or if the department should identify such information to allow the applicant to essentially revive their application. But it is refused. That refusal is all that the Department of State is required to give. And this goes back to the absurd results holding that the district court reached. It is not absurd in the context of foreign relations for the Department of State to be able to take time to consider evolving facts, take time to look at potential grounds of admissibility that an applicant might present, take time to get the decision right. And that's why there are two checks in the system. There's the visa application process to the Department of State and, of course, the admissibility decision by CBP at a port of entry. That's why the Congress created the system that way, is that this is not a Social Security benefit. This is not a situation where, as the district court cited to an opinion about disabilities education, where the government has required a state to give someone notice of why they're not doing a thing. The presumption is that if someone does not meet the threshold qualifications for visa eligibility, they don't receive a visa. But they could always attempt to get a visa again. Absolutely. Except in certain situations, Your Honor, where they're permanently ineligible. But those situations are not present here. But in the case of the father here, is there anything he can do while this proclamation is in place? There are some exceptions to the proclamation. And I believe that Plaintiff's Counsel is in a here. However, the government has made an individualized decision in this 212-F refusal that the plaintiff appellant is not suitable for a national interest waiver. And therefore, on the basis of his nationality, the State Department is required to evaluate and ascertain what nationality he has. The proclamation applies to him. That sounds like an automatic decision. It is a case-by-case fact-finding, Your Honor. Because the State Department must evaluate the individual. That is something that can be complicated in many cases. And it's certainly something that the officer has to evaluate based on the information in the file. Well, there's a pending case here involving a request for a visa. He's impacted by the 212-F determination. Why not just send it back to the District Court and let the District Court sort it all out and see whether there's still an issue there? Your Honor, that's certainly an option. But the government's position is that there's no Article III standing here. And this Court should recognize that there was not. Why? Because he sued the Secretary of State? That is the first element. At the beginning, that was the clearest element of lack of standing. But now there is also no redress available. And as we've talked about, since that proclamation that we've discussed is in effect, there are a few ways around it and none that are at issue here. How does this not just depend on your view of the legality of the proclamation? Respectfully, Your Honor, while the proclamation is in effect, it is binding on the consular officer. There's simply nothing they could do if the court were to order them to re-adjudicate this claim. So the proper defendant, the consular officer, can't do anything to help? That's right, Your Honor. In the situation where they are required to spend time re-evaluating the bona fides of the applicant, they would reach the same conclusion because they are bound by the I should point out that there is a decision that I think you made, Your Honor, Judge Nguyen, this is more like your Barbaria decision, where you evaluated a statute that gave discretion to USCIS over a regulation of adjustment of status. The statute conveyed discretion over how the processing should work and the timing. And in this situation, the Department of State has issued regulations under 1202A and 1201A about the visa issuance process. The applicant is required to appear for a visa interview. All of the things that were at issue in this case before Thursday come down to the interpretation of the Department of State interpreting that statute and the statute gives them that discretion. And of course, in the Trump versus Hawaii case, in a similar 212F situation, the Supreme Court found that the INA gave exuded discretion as to the President's decision to issue a proclamation just like this one. There's ample statutory discretion by all the parties involved on the government side that should demonstrate that there's no redress available in this case, that they are simply applying the statute as written, exercising their foreign affairs powers. So because the issue really revolves around this 212F determination, which the consular officer has nothing to do with really anymore, has to apply it, required, why wouldn't the Secretary of State be a correct defendant here? Because the 212F, as I understand it, Your Honor, still requires a consular officer to determine alienage and nationality. The consular officer has made a fact-specific determination to issue the very brief notice that you've all seen as of last Thursday, and that decision is protected by consular non-reviewability in terms of the ability of the district court to grant redress. Once a decision has been made on the basis of fact-finding, there is no redress, there is no reconsideration of whether it was the correct decision. Again, this is what the law intended, and under Munoz— It's a jurisdictional issue that we don't have the authority to review a consular officer's determination? That's the government's view? The government's view is that it's a matter of redressability. It is that there is no redressability because consular non-reviewability, which is a creation of the courts, recognizes that courts are not permitted to intervene in the fact-finding process or the ultimate decision of whether to overturn a consular officer's judgment. So if the appellant challenges the proclamation, how is he supposed to bring that challenge? Well, he could amend his complaint. He could always—I think this is a question better addressed to my friend, Mr. Morrison, but I'll attempt to answer it. He could make a constitutional claim, although, of course, under Munoz, the recent Supreme Court decision, there is no constitutional right, for example, to reside in the United States with your spouse or to ignore security admissibility decisions. That case was about a criminal ground of admissibility rather than 221G. But here, we believe the same thing applies, that consular non-reviewability would shield the government's decision unless a constitutional claim were made. All right. Anything further, counsel? Yes, Your Honor. Again, we would add that this case, up until Thursday at least, was about the Department of State's interpretation of a statute. The lower court, while their ultimate decision was correct, had inaccurate reasoning in terms of absurd results, and we just want to say that Congress intended for the system to work. Much as it does, the Department is allowed to create a regulation that would say where the applicant will apply for a visa and when the visa application process would begin. The Department of State has done so here, and we ask that you explain this and resolve the confusion among the district courts if you decide this case is not moot, which we believe it is. What confusion are you referring to here? On the duty to schedule the interview or this administrative processing piece? Both, Your Honor. Of course, as you mentioned, this case has evolved since the time of the district court's decision. But at that time, the district court found that the Department of State's interpretation of the statute would produce absurd results, found a duty, which we believe is not present in any statute or regulation, to schedule an interview. We understand this absurd results conclusion has also been used to reach the same result as to visa adjudication, that 221G and administrative processing create absurd results in terms of delay. We believe that this is an invalid understanding of the statute, the deference that it grants the Department of State, Your Honor. Government rests. Thank you, counsel. Thank you, Your Honors. So one clarification, my friend on the other side mentioned that appellants had sued the Attorney General and the Secretary of State, and I thought that was just a scrivener's error, but apparently they still think that. That's not true. If you look in the record, we just sued the Secretary of State. We did not sue the Attorney General. So that controversy doesn't exist. As far as the Secretary of State, we say that he is over everyone at the Department, and they work for him. They follow his leads. Recently, Secretary Rubio sent a cable out to all the consular officers telling them to refuse visa applicants under 221G, the Administrative Processing Refusal Code, because of the 75 country pause on immigrant visa applications. So the idea that consular officers are making these individual determinations, it's a little shaky. What they're making an individual determination on is, is the Iranian, yes, 221G. The instruction was given at a higher level to make that refusal is what I'm getting at. If the case were remanded, could you amend your complaint to solve for this potential issue by adding a consular officer or consulate as a defendant? Great question, Your Honor. The appellees filed something on the record a few days ago of what they call the visa decision, and it's signed with a little squiggly line, and it says American consular officer. We don't know who that is. So I almost think that they're trying to sabotage our ability to hold them reviewable because we don't know who the person is that they're asking us to sue. We're just saying, don't sue the secretary. Ultimately, it's the U.S. government. Whosever name is on it doesn't really make sense why that would be, make a difference to me. If there's a remand and the focus is 212F, is the Secretary of State the proper party? In Helen's view, yes. And I'm glad you brought that up because there's another case working its way through the Central District of California called NORI, N-O-R-I, before Judge Carter where we are, we did amend the complaint and we are challenging a 212F refusal as not a refusal. So that would be the proper path for this case in Appellant's view. Also, I want to correct the record on the question came up, is this being briefed before the Ninth Circuit? And my friend on the other side said no. And actually, it is an honest mistake. It just happened last week in a case called Heskeri that I'm co-counsel on that'll be before the court next month. The government's answering brief made this argument that a 212F refusal is permanent and the reply brief will also brief that issue. So the 212F issue, I think, is not ideally before this court. It's probably more ideally before that court. What's the name of that case again? Do you have the spelling of that? A-S-G-H-A-R-I. And I looked for the number and I didn't have it in my notes. That's all right. You're actually a little over time. Oh, I'm over. My apologies. No, go ahead and finish. Okay. My friend on the other side said that the proclamation is binding on a consular officer and it's appellant's position that the presidential proclamations are not binding on consular officers because they're issued with authority under INA 212F, which doesn't mention consular officers. They're binding on the Custom and Border Patrol agents that are inspecting travelers before they enter the U.S., but they're not binding on consular officers. Appellants, rest. All right. Thank you very much to counsel for both sides for your helpful arguments this morning. The matter is submitted.
judges: NGUYEN, BRESS, Tunheim